Evans J.
delivered the opinion of the Court.
By the trover Act of ¡827, 6 Stat., 337, a Judge, or the clerk of a Court, upon affidavit of the plaintiff’s intention, to commence an action of trover for the recovery of a specific chattel, and that such chattel belongs to the plaintiff, and has been converted by the defendant, is authorized “to make an order directed to all and singular the sheriffs oftbc said State, requiring them, or cither of them, without delay, to cause the defendant or defendants, to enter into bond with security to the sheriff of the district in which such action may be brought, for the production of the chattel sued for, to satisfy Í he plaintiff’s judgment, and such specific chattel shall be liable to satisfy the plaintiff’s judgment to the exclusion of other creditors.” According to the well established rule, as it has always been understood to be, as laid down in Norrell v. Corley, (see 2 Rich. E R., 288, in note, confirmed in Rogers and Thomson, v. Moore, and Foreman v. Nelson, 2 Rich. E. R., 287,) the effect of a verdict in trover, was to vest the property in the defendant, and the *441 plaintiff’s was only a judgment creditor, to take rank according to the date of his judgment and execution, and if, in the mean time, the defendant, had sold or destroyed the property, and had become insolvent, the plaintiff eventually got nothing after he had established his title to the property, and that the defendant was a wrong doer. The act was intended to provide a remedy for these evils, by requiring that the specific chattel should be produced by the defendant to be sold under the plaintiff’s execution, and that the plaintiff should have the proceeds of the sale to the exclusion of the other creditors. To secure the production of the property, the defendant is required to give a bond with security. It is a necessary, legal consequence, that if the chattel sued for is not delivered to satisfy the plaintiff’s judgment, the bond is forfeited, unless the defendant, or his security, when sued, can show something which will in law save the penalty of his bond. The defence set up for this purpose in this case, is, that the former sheriff, who was the obligee of the bond, levied on and sold the buggy under older executions. I suppose it is law, that if the obligee prevent the obligor from keeping his bond, or put it out of his power to perform the condition, this would discharge the obligor. But this rule can have no application to a case like the present. There is some proof of a levy and sale by the sheriff, but it is insufficient to establish that any sale was perfected. The entry is nothing more than the buggy bid off for 25 cents, but it is not said by whom, and immediately after the buggy was in Bennett’s possession. I think the clear inference is, that there was either no sale, or Bennett was the bidder, which would not operate as any change in the right of property. How then, in fact, can it be said, that the sheriff had put it out of the power of Bennett to perform the condition of his bond. He was in possession of the buggy when Leslie recovered his judgment, and it was entirely within his power to have performed, if he had chosen to do so. But he did not, and I am clearly of opinion the defendant was liable for the value of the buggy. The other question does not affect the right of the plaintiff to recover but the amount of the damages. I suppose, that pending the action, Bennett had a right to use *442 the buggy, and that the defendant is not liable for any deterioration arising from the ordinary use oí it. But in this case the reduction in value from one hundred and forty dollars, deducting the value of the cart wheels, to thirty or forty dollars, as estimated by the witnesses, was not the effect of natural deterioration arising from ordinary use, but from the use of it, or a journey to Mississippi and back, and to the injury done to it by the running away of the mules; which, from any thing that appears, was the result of negligence.
I think there should be a new trial; and the motion is granted.